**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALEXANDER BEITO ARIAS LUGO,<br><br>Defendant. | ) | No. 1:26-mj-3334 |

**MEMORANDUM AND ORDER ON THE UNITED STATES' MOTION FOR REVOCATION OF THE ORDER OF THE CONDITIONS OF RELEASE**

**KOBICK, J.**

Defendant Alexander Beito Arias Lugo was charged by criminal complaint in September 2026 with conspiracy to distribute, and to possess with intent to distribute, fentanyl, in violation of 21 U.S.C. § 846. After holding a hearing, the Magistrate Judge determined that pretrial detention was not warranted and ordered Arias released on conditions pursuant to 18 U.S.C. § 3142. The government then filed a motion under 18 U.S.C. § 3145(a) to revoke the Magistrate Judge's release order and detain Arias pending trial. That motion will be granted. On *de novo* review, the Court concludes that Arias' positive work history, family ties to Massachusetts, and lack of a criminal record are outweighed by the presumption in favor of pretrial detention in 18 U.S.C. § 3142(e), the seriousness and danger of the charged offense, the strength of the evidence against Arias, and the depth of his family ties to the Dominican Republic. The government has therefore met its burden to demonstrate, by a preponderance of the evidence, that Arias poses a risk of flight and that his detention pending trial is warranted.

## BACKGROUND

The following facts are drawn from the criminal complaint, the transcripts of the detention hearings, and the parties' evidentiary submissions. *See United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990).

Arias allegedly distributed fentanyl to a cooperating source on two occasions in September 2026: 500 grams on September 1 and two kilograms on September 15. ECF 40, at 11:13-14:24. Both purchases were audio- and video-recorded and brokered by the same alleged coconspirator. *Id.* at 11:21-25, 13:10-14:3, 54:10-55:5. The cooperating source first purchased 500 grams of what appeared to be fentanyl from Arias for $5,000 on September 1, 2026. *Id.* at 11:13-12:5. Two weeks later, on September 15, that same source then purchased two kilograms of suspected fentanyl from Arias. *Id.* at 13:10-14:6. Those two kilograms have a street value of $20,000 to $40,000. *Id.* at 11:5-10. While the Drug Enforcement Administration ("DEA") has not yet completed testing of the substances in the two purchases, it suspects that those substances are fentanyl because their appearance and packaging was nearly identical to previous substances purchased from Arias' alleged coconspirator that tested positive for fentanyl. *Id.* at 12:6-13:9, 14:17-24, 55:22-57:10.

On September 15, 2026, Arias was arrested and charged with conspiracy to distribute, and to possess with intent to distribute, controlled substances, in violation of 21 U.S.C. § 846. *Id.* at 14:3; *see* ECF 11. Following his arrest, the DEA learned that Arias had been removed from the United States in 2022 and ordered not to return without authorization. ECF 40, at 15:3-11.

Arias had his initial appearance in this Court the next day. ECF 15. One week later, on September 23, the Magistrate Judge held an evidentiary hearing on the government's motion to detain Arias pending trial. ECF 22; *see* ECF 40. The government called one witness, a special agent who testified about Arias' drug transactions, and introduced three exhibits into evidence.

Counsel for Arias cross-examined the special agent but did not call any witnesses or introduce further evidence. After taking the government's motion under advisement, the Magistrate Judge determined at a subsequent hearing on September 30, 2026 that pretrial detention was unwarranted and granted Arias' motion for release on conditions. ECF 28; *see* ECF 19, 31. She concluded that, based on the evidence presented by the government, there was probable cause to find that Arias committed the charge alleged in the complaint. ECF 31, at 4:8-11, 6:2-3. Yet release on conditions was appropriate, the Judge determined, because Arias has a newborn baby with his partner, a consistent work history, and no record of criminal convictions or history of nonappearance before any court, and because of his limited participation in the drug sales as a delivery person on two occasions in one month. *Id.* at 6:12-7:9. The imposition of conditions, including electronic monitoring and surrendering of his passport, would, in the Judge's view, ensure the safety of the community and assure Arias' future court appearances. *Id.* at 8:3-9, 15:14-19, 16:4-19:6.

At the September 30 hearing, the Magistrate Judge also granted a seven day stay to permit the government to appeal her order of release. ECF 28. On October 7, 2026, the government filed a motion to revoke her release order and a motion to stay that order pending adjudication of the appeal. ECF 33, 34. That same day, this Court temporarily extended the stay to permit Arias time to oppose the stay motion. ECF 35. On October 16, 2026, after Arias opposed that motion, the Court granted the motion to stay release pending adjudication of the government's motion for revocation. ECF 36, 37. Arias filed an opposition to the revocation motion on October 25, 2026. ECF 42. The Court held a hearing the next day and took that motion under advisement. ECF 43.

## STANDARD OF REVIEW

A motion for review of a Magistrate Judge's order of pretrial release "shall be determined promptly." 18 U.S.C. § 3145(a). This Court conducts "*de novo* review of the contested order."

*United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The government bears the burden to prove either, (1) by clear and convincing evidence, that the defendant's release poses a risk of danger to the community or, (2) by a preponderance of the evidence, that the defendant is a flight risk. *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991); *see* 18 U.S.C. § 3142(f). To determine if detention is appropriate, the Court must consider "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the [defendant]; (3) the history and characteristics of the [defendant] . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

Where "there is probable cause to believe that the [defendant] committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)," a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). The presumption shifts the burden of production to the defendant to offer "some [rebuttal] evidence." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) (quotation marks omitted). Once the defendant has met that burden, the presumption "does not disappear" and still "retains evidentiary weight," even though "[t]he burden of persuasion remains on the government." *Id.*

## DISCUSSION

Section 3142(e)(3)(A)'s rebuttable presumption applies because the maximum term of Arias' imprisonment exceeds ten years. The criminal complaint charges Arias with violating 21 U.S.C. § 846, which provides for "the same penalties as those prescribed for the offense" that "was the object of the . . . conspiracy." 21 U.S.C. § 846; *see* ECF 11. The underlying offense here is distribution of, and possession with intent to distribute, fentanyl, in violation of 21 U.S.C.

§ 841(a)(1), which is punishable by a term of imprisonment of at least ten years. 21 U.S.C. § 841(b)(1)(A)(vi); *see* ECF 11-1, ¶ 7. In this appeal, Arias does not dispute that probable cause supports the charged offense or that the presumption applies and weighs in favor of pretrial detention. To rebut the presumption, Arias offers the pretrial services report and his proposed release plan. *See United States v. Iglesias-Benitez*, 974 F.2d 1329 (1st Cir. 1992) (Rule 36 decision) (noting that magistrate judge "accepted into evidence the Pretrial Services Report" and relying on that evidence); *United States v. Vargas*, 804 F.2d 157, 158 (1st Cir. 1986) (observing that magistrate judge detained defendant based on information in such a report). From Arias' perspective, those documents support release by demonstrating his strong work history, his lack of criminal convictions, and his connection to his younger child and partner in Massachusetts.

The Court need not decide whether this evidence is sufficient to rebut Section 3142(e)'s presumption of detention. Even assuming that Arias has rebutted the presumption, the presumption still carries "significant weight" because his "case appears to resemble the 'congressional paradigm' . . . involving the special risks of flight and danger posed by organized drug traffickers." *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (citation omitted). The balance of the Section 3142(g) factors also supports pretrial detention. *See United States v. Valdivia*, 104 F. App'x 753, 754 (1st Cir. 2004) (affirming pretrial detention on flight risk grounds without deciding whether the presumption was rebutted where the defendant "focused on his strong family ties, his steady and gainful employment history, [and] his good reputation in the community").

The first factor weighs in favor of detention because of the serious nature and circumstances of Arias' charged offense of conspiracy to distribute, and to possess with intent to distribute, controlled substances. Arias allegedly sold an enormous amount of fentanyl—over two

kilograms—to a cooperating source in September 2026. The First Circuit has repeatedly "recognized the possession and distribution of fentanyl as extremely dangerous based on the drug's potency and known lethality." *United States v. De La Cruz*, 91 F.4th 550, 554 (1st Cir. 2024) (citation modified); *see United States v. Concepcion-Guliam*, 62 F.4th 26, 36 (1st Cir. 2023) ("Fentanyl is an extremely dangerous drug, widely reputed to be the modern-day equivalent of the Grim Reaper.").

The second factor supports detention because the weight of the evidence appears strong. According to the government, Arias sold fentanyl to a cooperating source in two controlled purchases that were subject to audio- and video-surveillance. Although testing has not yet been completed, the appearance and packaging of the substances in those purchases is almost identical to substances previously bought from Arias' alleged coconspirator that tested positive for fentanyl.

The third factor, which concerns Arias' history and characteristics, is neutral. Section 3142(g) directs courts to consider a defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g). On the one hand, Arias has significant family ties to the Dominican Republic, where he is a citizen. His first child, who is seven years old, lives in the Dominican Republic, as do his parents and three siblings. His partner's mother also lives in the Dominican Republic and cares for Arias' child there. Arias does not have deep ties to Massachusetts, as he was removed from the United States in 2022. On the other hand, Arias has no criminal record, and he has a younger child with his partner in Massachusetts, though he does not live with them. Until his arrest, he held a steady job as a cook for a restaurant in the Commonwealth.

The fourth factor favors detention because Arias' alleged conduct indicates that he may pose a danger to the community. Arias allegedly sold over two kilograms of fentanyl to a cooperating source. While acknowledging that "fentanyl has caused a lot of suffering in the community," Arias contends that his minor role as a two-time drug courier indicates that he does not pose a danger to the community. ECF 42, at 4-5. The government disputes that Arias' role was minor, given the quantity of money and drugs with which he was entrusted. But even if Arias did act only as a courier, the First Circuit has recognized the dangers of introducing such a lethal drug into the community, notwithstanding a defendant's "low-level, non-discretionary role" in a drug transaction. *De La Cruz*, 91 F.4th at 554-55.

Based on its *de novo* review of the record, the rebuttable presumption of Section 3142(e), and the Section 3142(g) factors, the Court concludes that pretrial detention is warranted because no condition will reasonably assure Arias' appearance, and a preponderance of the evidence shows that Arias presents a flight risk. Starting with the applicable presumption, Congress has found that "flight to avoid prosecution is particularly high among persons charged with major drug offenses and that drug traffickers often have established ties outside the United States and have both the resources and foreign contacts to escape to other countries." *Valdivia*, 104 F. App'x at 754 (citation modified). Since the evidence against Arias "is strong, the incentive for relocation is increased." *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987). Arias also has a motive to flee because he "faces potentially severe penalties." *United States v. Arroyo-Reyes*, 32 F.3d 561 (1st Cir. 1994) (Rule 36 decision). He is a citizen of the Dominican Republic, where his parents, elder child, and siblings live, and he faces "the possibility of his deportation upon conviction." *United States v. Moreno*, 30 F.3d 127 (1st Cir. 1994) (Rule 36 decision). Although his partner and younger child live in Massachusetts, he does not share a residence with them, and the remainder of his

personal ties appear to be in the Dominican Republic. Further, by returning to the United States without permission after his removal in 2022, Arias has shown a willingness not to abide by court orders. His past steady work history and family ties in the Commonwealth are outweighed by these considerations, particularly as it appears unlikely that, if released on conditions, he could return to lawful work in light of his immigration status. *See United States v. Hernandez-Rodriguez*, 181 F.3d 81 (1st Cir. 1998) (Rule 36 decision) (affirming pretrial detention on risk of flight grounds for similar reasons despite defendant's "family and community ties"); *Moreno*, 30 F.3d 127 (same notwithstanding defendant's "proof of family ties and employment in Massachusetts"); *Arroyo-Reyes*, 32 F.3d 561 (same even though "defendant did proffer evidence of strong family and community ties"); *Iglesias-Benitez*, 974 F.2d 1329 (same even though "defendant presented evidence of strong family and community ties" in Puerto Rico); *Palmer-Contreras*, 835 F.2d at 18 (same despite defendants' "strong family ties to Puerto Rico"). Other than his partner and younger child, little binds Arias to Massachusetts, and the evidence suggests that he has incentives to flee.

Having concluded that the government has shown, by a preponderance of the evidence, that Arias poses a risk of flight, the Court need not consider the government's alternative argument that he poses a danger to the community by clear and convincing evidence. *See Valdivia*, 104 F. App'x at 755 n.2 (declining to address dangerousness after affirming flight risk finding).

**CONCLUSION AND ORDER**

For the foregoing reasons, the government's motion for revocation of the Magistrate Judge's pretrial release order, ECF 34, is GRANTED. Arias shall remain detained pending trial.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: November 24, 2026